IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NATHAN O. KEYES,<br><br>            Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>            Defendant. | 8:18CV569<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on plaintiff Nathan O. Keyes's ("Keyes") Motion for an Order Reversing the Commissioner's Decision (Filing No. 14) seeking judicial review of the final decision of defendant Andrew M. Saul, Commissioner of Social Security ("Commissioner"),[1] denying Keyes disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, and supplement-security income under Title XVI of the Act, *Id.* § 1381 *et seq.* The Commissioner filed a Motion to Affirm Commissioner's Decision (Filing No. 17) and resists Keyes's motion. For the reasons stated below, both motions are granted in part and denied in part and Keyes's claims are remanded.

I.     BACKGROUND
    A.     Facts

Keyes claims numerous ailments such as diabetes, depression, and reduced vision. Keyes focuses this appeal only on his vision issues, with complete blindness in his right eye and reduced vision in his left eye.

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019, and is automatically substituted as the defendant in this case. *See* Fed. R. Civ. P. 25(d).

Keyes, born in 1981, has a high-school education and previously worked as a box-maker and vending-machine repairer. On October 21, 2015, Keyes protectively filed for disability-insurance benefits and supplemental-security income, alleging a disability beginning January 1, 2014.

The Social Security Administration ("SSA") denied Keyes's claims on February 3, 2016, and again on reconsideration on May 3, 2016. Through counsel, Keyes requested a hearing, which an SSA Administrative Law Judge ("ALJ") conducted on December 12, 2017. Keyes and a vocational expert testified.

## B. The ALJ's Decision

In a written hearing decision, the ALJ followed the five-step sequential process, *see* 20 C.F.R. §§ 404.1520 and 416.920, for determining disability.[2]

Keyes does not challenge the first three steps where the ALJ found Keyes has (1) not engaged in any substantial gainful activity since the alleged onset date, (2) the "severe impairments" of "diabetes mellitus, reduced vision, gastroesophageal reflux disease (GERD), hypertension, and obesity," and (3) no "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."

---

[2]The steps are whether

> (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work.

*Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014).

As discussed below, Keyes does take issue with the ALJ's assessment of Keyes's residual functional capacity ("RFC").  The ALJ determined Keyes

> has the ability to perform light work . . . .  He should avoid climbing ladders, ropes, or scaffolds, but has the ability to no more than occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl.  He has no ability to drive commercial vehicles.  He has the ability to read 14-point type or greater and must avoid work requiring bilateral visual acuity, but can avoid normal hazards in the workplace . . . .  In addition, he has the ability to perform jobs that do not require binocular vision or work in dark areas (requires work to be performed in well-lighted places), no exposure to unprotected heights, and no use of foot controls bilaterally.

The ALJ considered (1) Keyes's reported symptoms, (2) his daily activities, (3) information from Keyes's mother, and (4) medical reports and opinions from several treating and consulting physicians.  The ALJ gave "the most weight" to the opinions of and a medical-source statement by Vikas Gulati, M.D. ("Dr. Gulati"), an eye specialist and Keyes's treating physician.  Based on Keyes's RFC, the ALJ determined at step four that Keyes is unable to perform his past relevant work.

At step five, the ALJ considered the vocational expert's testimony regarding the availability of jobs for a hypothetical person of Keyes's age, education, and work experience, who had the restrictions identified in determining Keyes's RFC.  Relevant here, the vocational expert testified the hypothetical person could, among other jobs, work as an office helper and a router, which are both light, unskilled jobs.  The vocational expert stated there are approximately 64,000 full-time office-helper jobs and 69,000 full-time router jobs in the national economy.

The vocational expert testified the hypothetical person could perform those jobs "with the caveat that . . . he would need to stay within the production requirements, but that's true for all unskilled employment."  The vocational expert mentioned the production issue because "with vision impaired people . . . the overall arching issue can become production and whether the person can be competitive in that area."  The vocational expert

confirmed her testimony is consistent with the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT"),³ U.S. Dep't of Labor, Employment & Training Admin., *Dictionary of Occupational Titles*, 1991 WL 645958 (4th ed. 1991), which the SSA relies on for disability determinations.

The ALJ decided "there are jobs that exist in significant numbers in the national economy that [Keyes] can perform." Accordingly, the ALJ found Keyes was not disabled.

Keyes argues the ALJ erred because (1) the vocational expert provided a "qualified response" to the ALJ's hypothetical and the ALJ failed to resolve an "apparent conflict" between the vocational expert's testimony and the DOT's descriptions of an office helper and router and (2) the ALJ did not offer good reasons for the weight afforded to Dr. Gulati's opinions. Keyes also asserts the "ALJ was an inferior officer not appointed in a constitutional manner."

## II.  DISCUSSION

### A.  Standard of Review

The Court will affirm the ALJ's decision if it is supported by "substantial evidence on the record as a whole." *Thomas v. Berryhill*, 881 F.3d 672, 674 (8th Cir. 2018); *see also* 42 U.S.C. §§ 405(g) and 1383(c)(3). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quoting *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)). The Court considers evidence that both detracts from and supports the ALJ's decision. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).

---

³The DOT includes a supplement, the Selected Characteristics of Occupations, which further details job requirements and characteristics. Any reference to the DOT includes the supplement.

4

### B. The Vocational Expert

First, Keyes argues the ALJ's conclusion at step five was not supported by substantial evidence because the vocational expert offered a "qualified response" to the hypothetical.

An ALJ "may rely on a vocational expert's response to a properly formulated hypothetical question to show that jobs that a person with the claimant's RFC can perform exist in significant numbers." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). "[T]o constitute substantial evidence, a vocational expert's testimony must be based on a hypothetical that captures the 'concrete consequences' of the claimant's deficiencies." *Scott v. Berryhill*, 855 F.3d 853, 857 (8th Cir. 2017) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). "An ALJ's reliance on a vocational expert's testimony is improper if the expert substantially changes the hypothetical beyond the ALJ's instructions." *Travis v. Astrue*, 477 F.3d 1037, 1043 (8th Cir. 2007).

Relying on *Penn v. Sullivan*, 896 F.2d 313 (8th Cir. 1990), and *Ellison v. Sullivan*, 921 F.2d 816 (8th Cir. 1990), Keyes argues the vocational expert repeatedly qualified her testimony by stating jobs would be available "as long as the person can stay within production requirements."

In *Penn* and *Ellison*, the ALJs erroneously relied on vocational-expert testimony when the vocational experts changed the ALJs' posed hypotheticals. In *Penn*, the vocational expert assumed the hypothetical person could work an eight-hour day when the ALJ did not express an opinion about whether that person could work a full-day. 896 F.2d at 317. In *Ellison*, the vocational expert assumed a hypothetical person could perform sedentary, light, or medium work, but the ALJ found the claimant could only do limited sedentary work. 921 F.2d at 821-22. This case is different.

Here, the vocational expert neither ignored the hypothetical's underlying criteria nor changed the nature of the hypothetical person's exertional requirements. This case instead

more closely resembles *Travis*, 477 F.3d 1037. There, a vocational expert testified that, while a hypothetical person could likely perform a cashier job, a poor ability to follow work rules "could be an issue . . . if that in and of itself would be enough to keep a person from performing that job." *Id.* at 1043. The Eighth Circuit found the ALJ properly relied on the testimony because the vocational expert simply "stated his opinion and then raised an issue for the ALJ's consideration." *Id.*

Just as in *Travis*, the vocational expert in this case "stated [her] opinion" that the hypothetical person could perform the officer-helper and router jobs "and then raised [the production] issue for the ALJ's consideration." *Id.* The vocational expert's "caveat" that the hypothetical person would have to maintain production (which is true for all unskilled workers) does not undermine the ALJ's findings.

Second, Keyes asserts the ALJ failed to resolve an "apparent conflict" between the vocational expert's testimony and the DOT's descriptions of an office helper and router. The argument is unconvincing.

An ALJ has an affirmative duty to ask about apparent conflicts between vocational-expert testimony and the DOT's description of a job. *See Thomas*, 881 F.3d at 677. If an ALJ does not identify and resolve the conflict, "the vocational expert's testimony is not substantial evidence to support a denial of benefits." *Stanton v. Comm'r, Soc. Sec. Admin.*, 899 F.3d 555, 558 (8th Cir. 2018).

To illustrate, the Eighth Circuit has found apparent unresolved conflicts existed where a hypothetical person could only "occasionally" reach overhead but the vocational expert testified to a job the DOT described as requiring "frequent[]" overhead reaching, *see Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014), and where a hypothetical person could lift fifteen pounds but the vocational expert testified to a job which the DOT described as involving up to twenty pounds, *see Montgomery v. Chater*, 69 F.3d 273, 275-77 (8th Cir. 1995). In those cases, because the ALJs did not elicit any reasonable

6

explanation for the conflicts with the DOT, the testimony could not support the ALJs' decisions. *See Moore*, 769 F.3d at 990; *Montgomery*, 69 F.3d at 277.

An ALJ has no duty to further inquire, however, "when a [vocational expert] merely testifies to information not included in the DOT, but that does not conflict with it." *Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1003 (8th Cir. 2018). In *Courtney*, the Eighth Circuit determined an ALJ was not required to scrutinize a vocational expert's "extra-DOT testimony" where the ALJ posed a hypothetical question including limitations (e.g., limited memory of instructions) not included in the DOT. *Id.* Moreover, "an ALJ can 'properly assume that the expert framed [her] answers based on the factors the ALJ told [her] to take into account." *Id.* at 1004-1005 (quoting *Whitehouse v. Sullivan*, 949 F.2d 1005, 1006 (8th Cir. 1991)).

In Keyes's view, because the office-help and router jobs suggested by the vocational expert in this case could involve "paperwork which could not reasonably be limited to 14-point font or higher," the ALJ erred in not scrutinizing the vocational expert's testimony on that issue. Not so.

The ALJ described the fourteen-point font limitation to the vocational expert, who responded with possible jobs. Although the DOT is silent on the issue of font size, requiring the vocational expert to consider information beyond the DOT, the ALJ could "properly assume" the vocational expert considered that font limitation when framing her answer. *Id.* (quoting *Whitehouse*, 949 F.2d at 1006). And the vocational expert did confirm her testimony was consistent with the DOT.

This case is unlike those where an obvious inconsistency existed between the vocational expert's testimony and the DOT's express terms. Because the vocational expert's testimony did not so contradict the DOT, the ALJ did not have to "inquire as to

7

the precise basis for the expert's testimony regarding extra-DOT information" on font size. *Id.* at 1004. "The ALJ was thus entitled to rely on the testimony."[4] *Id.* at 1005.

## C. Treating Physician

Keyes also argues the ALJ "did not provide good reasons for the weight afforded to Dr. Gulati's opinions" because the ALJ did not consider all of Dr. Gulati's limitations in determining Keyes's RFC. Keyes fares better on this argument.

An ALJ "must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) (quoting *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013)). An RFC "must be supported by some medical evidence of the claimant's ability to function in the workplace" but need not be "supported by a specific medical opinion." *Id.* at 932. "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Perks*, 687 F.3d at 1092 (quoting *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007)).

An ALJ must give a treating physician's opinion "controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)); *see also* 20 C.F.R. § 416.927(d)(2) (same).[5] If an ALJ does not afford a treating physician's opinion

---

[4]Although he did not brief the issue, Keyes also suggests the vocational expert improperly treated fourteen-point font as an accommodation. *See Higgins v. Comm'r, Soc. Sec. Admin.*, 898 F.3d 793, 796 (8th Cir. 2018) (allowing vocational expert's to only consider accommodations commonly offered in the workplace). But the vocational expert *only* discussed the font size as an accommodation for the sedentary jobs the vocational expert discussed, such as telemarketing, not for the office-helper and router jobs the ALJ ultimately considered.

[5]This standard applies to claims filed before March 27, 2017, like in this case.

8

controlling weight, the ALJ must "always give good reasons" for the weight given. *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (quoting 20 C.F.R. § 416.927(d)(2)); *see also* 20 C.F.R. § 404.1527(d)(2).

Further, an RFC "assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (SSA July 2, 1996).

In making the RFC assessment in this case, the ALJ considered numerous medical opinions, including that of Dr. Gulati, Keyes's treating physician. The ALJ noted Dr. Gulati completed a medical-source statement which reported Keyes "needs larger than 12-font print, has a need for additional lighting, and a need for additional time to read print." Dr. Gulati further opined Keyes could perform activities involving "depth perception rarely" and should "not perform any activities that require a commercial driver's license or good stereopsis."

The ALJ afforded Dr. Gulati's opinions and medical-source statement "the most weight because the record as a whole supports [Dr. Gulati's RFC] assessment."[6] Accordingly, the ALJ included all the limitations in Dr. Gulati's medical-source statement in Keyes's RFC assessment, with one exception. The ALJ, without comment, did not include the limitation that Keyes needs "additional time to read print" ("reading limitation"). According to Keyes, because the ALJ did not provide good reasons for this omission, Keyes's claims must be remanded. The Court agrees.

The ALJ failed to provide any reasons, let alone the required "good reasons," for omitting the reading limitation in determining Keyes's RFC. *See Cline*, 771 F.3d at 1103.

---

[6]The terms "most weight" and "controlling weight" are used interchangeably. *See, e.g.*, *Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 111 (6th Cir. 2010) (unpublished); *Nelson v. Astrue*, Civil No. 11-03346 (DWF/FLN), 2012 WL 7761489, *9 (D. Minn. Dec. 12, 2012). Keyes does not contend the ALJ used the terms differently here.

It is possible the ALJ inadvertently omitted that limitation or, if given the opportunity, the ALJ would provide good reasons for omitting it. Without any analysis, the Court has no basis for determining the ALJ's rationale and this case must be remanded as to this issue only. *See Bayne v. Berryhill*, No. 6:16-03465-CV-RK, 2018 WL 566511, *2 (W.D. Mo. Jan. 26, 2018) (collecting cases where courts remanded when an ALJ did not provide good reasons for discounting one or more limitations by treating physicians while adopting others).

On remand, the ALJ should reevaluate Dr. Gulati's opinions and address whether the reading limitation should be included in the RFC assessment. If the ALJ determines the reading limitation should be disregarded, the ALJ should provide good reasons for that decision.

If the ALJ decides to include the reading limitation, the ALJ should consider whether that limitation impacts the hypothetical questions posed to the vocational expert and the vocational expert's testimony.[7] *See Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010) (finding a hypothetical is only adequate if it "sufficiently limit[s] the universe of work [the claimant] can perform").[8]

### D. The Appointments Clause

Finally, Keyes argues, for the first time on appeal, the ALJ was an inferior office not properly appointed under the Appointments Clause of the United States Constitution. *See* U.S. Const. art. 2, § 2, cl. 2. Because Keyes neither raised this issue to the ALJ or Appeals Council nor provided any compelling reasons for failing to do so, he has forfeited

---

[7]The DOT's descriptions of office helper and router include reading up to a rate of 190 to 215 words per minute but other jobs allow reading at a rate as slow as 95 to 120 words per minute.

[8]Keyes also briefly asserts in his brief the ALJ inappropriately disregarded his subjective complaints about his reading limitation but because Keyes did not analyze this issue in his brief the Court will not consider it here.

it. *See Millard v. Berryhill*, No. 8:18CV452, 2019 WL 2502876, at *8 (D. Neb. June 17, 2017).

### III.   CONCLUSION

On careful review, the Court affirms in part and reverses in part the Commissioner's decision and remands this case for further proceedings on the weight afforded to Dr. Gulati's opinions and medical-source statement regarding the reading limitation. Accordingly,

IT IS ORDERED:
1. Keyes's Motion for an Order Reversing the Commissioner's Decision (Filing No. 14) and the Commissioner's Motion to Affirm Commissioner's Decision (Filing No. 17) are each granted in part and denied in part as set forth in this Memorandum and Order.
2. The Commissioner's decision is affirmed in part and reversed in part and remanded for further proceedings consistent with this Memorandum and Order.
3. A separate judgment will issue.

Dated this 16th day of January 2020.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge